UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MORGAN KEEGAN & COMPANY, INC.,

    Plaintiff,

v.

BONNIE JINDRA, et al.,

    Defendants.

CASE NO. C11-5704BHS

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff Morgan Keegan & Company, Inc.'s ("Morgan Keegan") motion for preliminary injunction (Dkt. 6). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On September 6, 2011, Morgan Keegan moved the Court for a TRO and preliminary injunction. Dkt. 6. On the same day, Morgan Keegan served Defendants Bonnie Jindra and Joseph Jindra (the "Jindras") with a summons in this matter. Dkt. 9. The parties did not continue to pursue the TRO and the Court set a hearing on the motion for preliminary injunction.

## II. FACTUAL BACKGROUND

This matter arises out of the Jindras' attempt to arbitrate claims that they filed against Morgan Keegan for fraud, violations of federal and state securities laws, violations of the Tennessee Consumer Protection Act, and violations of the Financial Industry Regulation Authority ("FINRA")[1] Rules 2210, 2120, and 3010. *See* Dkt. 1, Ex. A (the Jindras' statement of claims against Morgan, "SOC").

Morgan asserts that it is not subject to arbitration on the basis that it has no agreement whatsoever with the Jindras. Dkt. 6. Morgan Keegan further asserts that because the Jindras are not its customers, it cannot be forced to arbitrate under FINRA. It is on these two bases that Morgan predicates its motion for preliminary injunction. *Id*.

According to the SOC, the Jindras' broker, Jim Potter ("Potter"), relied heavily on "verbal and written communication distributed by Morgan Keegan for the purpose of persuading third party Brokers" to recommend or purchase proprietary high-yield bonds (the "RMK Funds"). "This information was the same information Morgan Keegan provided to its own discretionary account Brokers." SOC ¶ 6. The Jindras also allege that Potter began purchasing certain RMK Funds from Morgan Keegan for himself and for the Jindras. *Id*. ¶ 8.

---

[1] FINRA, formerly the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission as a national securities association created under the Maloney Act amendments to Section 15A of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78o-3. The NASD Code of Arbitration was the predecessor to the FINRA Code, and FINRA has stated that it intended no substantive change when it replaced NASD Rule 10301 with FINRA Rule 12200. *See* Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, www.finra.org/web/groups/rules_regs/documents/rule_filing/p018366.pdf.

Absent from the SOC is any claim by the Jindras that they have a contractual relationship by written agreement with Morgan or that they are customers of Morgan. *See, e.g.*, SOC ¶ 20 ("In fact, . . . Morgan . . . manipulated and deceived [its] own customers and brokers into believing that these RMK Funds were as represented . . . .").

### III. DISCUSSION

**A.  Standard**

The court may issue a preliminary injunction where a party establishes (1) a likelihood of success on the merits, that (2) it is likely to suffer irreparable harm in the absence of preliminary relief, that (3) the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135, 632 F.3d at 1135 (9th Cir. 2011) (holding that the Ninth Circuit's "sliding scale" approach continues to be valid following the *Winter* decision).

**B.  Morgan's Motion for Preliminary Injunction**

**1.  Likely To Succeed on the Merits**

Arbitrability is a question for the courts to decide. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010) ("The arbitrability of a particular dispute is a threshold issue to be decided by the courts, unless that issue is explicitly assigned to the arbitrator"). Morgan Keegan has the burden of establishing that it is likely to succeed on the merits of its case. *Winter*, 129 S. Ct. at 374. The issue

underlying Morgan Keegan's motion is whether FINRA lacks the authority to arbitrate the Jindras' claims against Morgan Keegan.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navig. Co.*, 363 U.S. 574 (1960). However, when an agreement to arbitrate exists, federal courts have long recognized and enforced a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). "Questions of arbitrability" – such as whether an arbitration agreement exists and whether an arbitration clause covers the dispute in question – are issues "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *AT&T Techs., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 649 (1986)).

Here, because it appears that no arbitration agreement exists between the Jindras and Morgan Keegan, the only available basis upon which the Jindras can force Morgan Keegan to arbitrate their claims appears to be under FINRA. *See* SOC; *see also* Dkt. 1. While there is a public policy favoring arbitration, FINRA is a non-governmental agency, and it has no specific grant of authority – from Congress or some other form of governmental power – to conduct arbitration proceedings. As such, its authority to compel arbitration must have some contractual basis – either a contract between customer and FINRA member, or an agreement between the member and FINRA. *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2nd Cir. 2001) (finding that NASD

member, by virtue of its membership in NASD, had agreed to arbitrate all disputes under Rule 10301 of the NASD Code of Arbitration). Although Morgan Keegan does not dispute that it is a FINRA member, it claims that the Jindras are not its customers.

It appears that the Jindras hinge their case on Rule 12200 of the FINRA Code, which states that parties must arbitrate a dispute if:

> [a]rbitration under the Code is either:
> (1) Required by a written agreement, or
> (2) Requested by the customer;
> The dispute is between a customer and a member or associated person of a member; and the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Proc. R. 12200.[2]

Who, specifically, is a "customer" within the meaning of FINRA 12200 remains unaddressed by the Ninth Circuit Court of Appeals. However, FINRA Rule 12100(i) defines "customer" only in the negative, stating: "[t]he term 'customer' shall not include a broker or dealer." Thus, the Jindras argue, they are customers of Morgan Keegan because they are not brokers or dealers.

In the past, courts generally have construed the term "customer" broadly, but not so broadly as to include everyone who is not considered a broker or a dealer. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001); *BMA Financial Services, Inc. v. Guin*, 164 F. Supp. 2d 813, 818-19 (W.D. La. 2001). Other

---

[2] Under FINRA, "associated persons" is defined as only natural persons, which Morgan is not. Therefore, the Jindras could not be proceeding under this portion of FINRA.

courts have recognized that the definition of "customer" must not be so broad that it would upset the reasonable expectations of the FINRA members, as parties to the "contract" created by the FINRA rules. *See BMA Financial Services, Inc.*, 164 F. Supp. 2d at 819 (interpreting NASD, now FINRA). Instead, they looked at the nature of the relationship between the investor and the FINRA member. *See id*. at 820.

Recently, three district courts have granted a motion for preliminary injunction in cases involving Morgan Keegan as the plaintiff and defendants similarly situated to the Jindras. *See Morgan Keegan & Co. v. Ras*, No. 5:11-CV-352-KKC 2011 WL _____ (E.D. Ken. Nov. 14, 2011); *Morgan Keegan & Co. v. Drzayick*, No. 1:11-CV-126-EJL, 2011 WL 5403031 (D. Idaho Nov. 8, 2011); *Morgan Keegan & Co. v. Shadburn*, No. 2:11-VB-624-WKW, 2011 WL 5244696 (M.D. Ala. Nov. 3, 2011). In each of those cases, the court granted the motion for preliminary injunction finding that Morgan Keegan was likely to succeed on the merits because the defendants were not customers under FINRA 12200. *See id*. In *Shadburn*, the court found that under the defendant's "proposed definition . . . a FINRA member's membership alone would require arbitration. Such a result would 'do significant injustice to the reasonable expectations of [FINRA] members.'" 2011 WL 5244696 at *8 (quoting *Wheat First Sec., Inc. v. Green*, 993 F.3d 814, 820 (11th Cir. 1993)) (alteration in original). In addition, on facts substantially similar to those present in the instant case, two courts have vacated FINRA arbitration awards because the investors who purchased RMK Funds from third-party brokers were not customers, thus, could not arbitrate against Morgan Keegan before FINRA. *See Morgan Keegan & Co. v. Garrett*, __F. Supp. 2d __, No. 4:10-CV-4308,

2011 WL 4716060 at *1-2 (S.D. Tex. Sept. 30, 2011); *Zarecor v. Morgan Keegan & Co.*, No. 4:10-CV-1643-SWW at *8-9 (E.D. Ark. July 29th 2011).

In *Ras*, under almost identical facts to those present in the instant case, the court adopted the reasoning in *Shadburn*, finding that Morgan Keegan was likely to succeed on the merits, and granted the motion for preliminary injunction. *See* 2011 WL _____. Here, as in *Ras* and *Shadburn*, the Jindras are investors who interacted with a third-party broker who had an account with Morgan Keegan; however, their advisor (Potter) was not an employee, agent, or registered representative of Morgan Keegan. *See* SOC. Like the defendant in *Shadburn*, the Jindras' relationship with Morgan Keegan is "void of any form of business qualities whatsoever." 2011 WL 5244696 at *8. The Jindras "did not purchase shares in the RMK Fund through Morgan Keegan." *Id*. They "did not pay for any investment, brokerage or other service through Morgan Keegan." *Id*. The Jindras "did not have a direct transactional relationship with Morgan Keegan (or its associated person)." *Id*. (quotations marks and citation omitted). Finally, the Jindras did not have an account with Morgan Keegan, and "Morgan Keegan has no record of any documents, accounts, or files related to anyone named Bonnie Jindra or Joseph Jindra." Dkt. 7 at 3. (Declaration of William Schmitt).

Five district courts in five different circuits "have all concluded that individual investors who purchased the RMK Fund from third-party brokers were not customers of Morgan Keegan and cannot force Morgan Keegan to participate in FINRA arbitration." *Ras* 2011 WL _____. Here, as in *Ras*, the Jindras offer "no case law that reaches a contrary result on similar facts." *Id*.

Accordingly, the Court adopts the reasoning in *Shadburn* and *Ras* in concluding that the Jindras are not "customers" of Morgan Keegan under FINRA 12200. Therefore, Morgan is likely to succeed in establishing that it is not subject to arbitration with the Jindras under FINRA.

### 2. Irreparable Harm

Morgan Keegan cites several unpublished cases to the effect that a party suffers per se irreparable harm when it is forced to arbitrate claims that are not arbitrable. *See* Dkt. 6 at 6-7 (collecting cases). The Court also finds that case law supports finding that a party suffers irreparable harm when it is "forced to expend time and resources arbitrating an issue that is not arbitrable." *See, e.g.*, *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *Paine Webber, Inc. v. Hartman*, 921 F.2d 507, 515 (3rd Cir. 1990) (holding that Paine Webber would suffer per se irreparable harm if a preliminary injunction was not entered prior to the court's determination of whether the customer's claims at issue were eligible for NASD, now FINRA, arbitration).

Therefore, for purposes of this motion, the Court finds that Morgan Keegan will suffer irreparable harm if it is forced to arbitrate what appears to be claims that are not arbitrable.

### 3. Balance of Hardships

To determine whether the balance of hardships favors the moving party, courts must "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 571 F.3d 960, 988 (9th Cir. 2009).

Here, as explained above, it appears that the Jindras have no right to force Morgan Keegan to arbitrate this action. If the Court denied the preliminary injunction, Morgan Keegan would be forced to spend substantial time and resources defending the Jindras' claims before FINRA. Allowing the Jindras to proceed with arbitration would benefit them in no way because the arbitration award would ultimately have to be set aside by the Court.

Thus, the balance of equities favors granting the injunction to prevent arbitration.

**4.     Public Interest**

It is not in the public interest to force a party into arbitration on issues that are not arbitrable. Because it appears that the Jindras have no basis upon which to force Morgan Keegan into arbitration, it would be against the public interest to deny the preliminary injunction.

**5.     Bond**

Pursuant to Rule 65(c) of the Federal Rule of Civil Procedure, the Court may require the party seeking a preliminary injunction to post a security bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

It does not appear that a bond is necessary in this matter. Therefore, no bond will be required.

**C.     Conclusion**

A preliminary injunction enjoining the Jindras from proceeding in arbitration against Morgan is warranted in this instance.

# IV. ORDER

Therefore, it is hereby **ORDERED** that:

1. Morgan's motion for preliminary injunction is **GRANTED** as discussed herein.

2. Unless and until the Court orders otherwise, the Jindras are enjoined from proceeding in the arbitration proceeding before FINRA, styled *Bonnie and Joseph Jindra v. Morgan Keegan & Company, Inc.*, FINRA Case No. 11-03041.

Dated this 22nd day of November, 2011.

_____
BENJAMIN H. SETTLE
United States District Judge